# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

---

## APPEAL NO. 23-1087

---

## TONYA C. HUBER,
## PLAINTIFF-APPELLANT,

### v.

## WESTAR FOODS, INC.,
## DEFENDANT-APPELLEE.

---

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

---

## APPELLANT REPLY BRIEF

---

Alexis S. Mullaney, #25908
Fiedler Law Firm, PLC
17330 Wright Street, Suite 102
Omaha, NE 68130
(402) 316-3060
(402) 513-6501 (facsimile)
alexis@employmentlawnebraska.com

Attorney for Plaintiff-Appellant.

i

# TABLE OF CONTENTS

I.   TABLE OF AUTHORITIES.............................................................................iv

II.   ARGUMENT .............................................................................................6

   A.   The District Court erred in dismissing Tonya's FMLA claims. ................7

      1.   Kelchen's Notes Prove Westar Had Notice of Tonya's Need for FMLA
          Leave Prior to Termination Decision................................................. 7

      2.   A Fast Food Franchise's Employee Handbook Should Not Supplant Federal
          Law.................................................................................................. 9

   B.   In Assessing Westar's ADA liability, Kelchen's Discriminatory Animus is
      Westar's Discriminatory Animus......................................................12

   C.   The District Court Erred in Denying Tonya's Motion for Partial Summary
      Judgment and Tonya's Motion to Strike..........................................16

      1.   Westar failed to timely disclose Rowe and Kelchen as witnesses with
          discoverable information regarding its affirmative defenses. .......... 17

      2.   Westar's Failure was neither substantially justified nor harmless.....19

      3.   No lesser sanction is warranted. ..................................................... 21

      4.   The District Court's decision denying Plaintiff's Motion for Partial Summary
          Judgment as to Westar's failure to mitigate affirmative defense should be
          reversed. ........................................................................................ 21

III.   CONCLUSION......................................................................................22

Appellate Case: 23-1087    Page: 2    Date Filed: 06/02/2023 Entry ID: 5283368

IV.  CERTIFICATE THAT BRIEF IS VIRUS FREE..................................................i

V.  CERTIFICATE OF COMPLIANCE...........................................................i

VI.  CERTIFICATE OF SERVICE................................................................ii

Appellate Case: 23-1087    Page: 3    Date Filed: 06/02/2023 Entry ID: 5283368

# I. TABLE OF AUTHORITIES

**Cases**

*Anderson v. AstraZeneca, L.P.*, 477 Fed. Appx. 427, 428 (8th Cir. 2012) .......................... 18

*Bacon v. Hannepin Cty. Med. Ctr.*, 550 F.3d 711, 715 (8th Cir 2008) .................................. 8

*Callison v. City of Phila.*, 430 F.3d 117, 121 (3rd Cir. 2005) ................................................. 8

*Holladay v. Rockwell Collins, Inc.*, 357 F.Supp.3d 848, 861 (S.D. Iowa January 24, 2019) 8,
    9

*Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1220, n.6 (11th Cir. 2019) .............. 12

*Lichtenstein v. University of Pittsburgh Medical Center*, 691 F.3d 294, 305 (3rd Cir. 2012) .... 6

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973) .............................................. 12

*Mora v. Chem-Tronics, Inc.*, 16 F.Supp.2d 1192, 1217 (S.D. Cal. 1998) .............................. 9

*Pedigo v. P.A.M. Transp., Inc.*, 60 F.3d 1300, 1301 (8th Cir. 1995) ................................... 12

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 134 (2000) ............................... 10

*Schwartz v. Clark County*, 650 Fed.Appx. 542, 544 (9th Cir. 2016) ................................. 10

*Thorson v. Gemini, Inc.*, 205 F.3d 370, 377-378 (8th Cir. 2000) ...................................... 5, 6

*U.S. Commodity Futures Trading Com'n v. Kratville*, 796 F.3d 873 (8th Cir. 2015) .............. 17

*Vance v. Ball State Univ.*, 570 U.S. 421, 446-47 (2013) ...................................................... 10

*Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 702 (8th Cir. 2018) ...... 15, 18

Appellate Case: 23-1087   Page: 4   Date Filed: 06/02/2023 Entry ID: 5283368

**Statutes**

29 U.S.C. §2652........................................................................................... 9

42 U.S.C. § 2000e-2(m) ............................................................................ 13

**Rules**

Fed. R. Civ. P. 26(a) ................................................................................ 14

Fed. R. Civ. P. 37 ................................................................................ 14, 15

**Regulations**

29 C.F.R. § 825.191 .................................................................................. 7

29 C.F.R. § 825.303 ........................................................................... 7, 8, 9

29 C.F.R. §825.115 ................................................................................... 5

Appellate Case: 23-1087    Page: 5    Date Filed: 06/02/2023 Entry ID: 5283368

## II.    ARGUMENT

The District Court erred in sustaining Westar's Motion for Summary Judgment on Tonya's FMLA and ADA claims, and in denying Plaintiff's Motion for Partial Summary Judgment as to Westar's failure to mitigate affirmative defense and Plaintiff's Motion to Strike the affidavits of Amy Rowe ("Rowe") and Cindy Kelchen ("Kelchen"). When the appropriate legal analysis is applied to Tonya's FMLA interference claims, remaining disputes over material facts – including whether Tonya's condition had stabilized, and whether she contacted Westar "as soon as practicable" under the circumstances – should have precluded summary judgment. Additionally, Westar's stringent application of its internal attendance policy, which conflicts with the FMLA, cannot serve as an independent reason, "wholly unrelated" to Tonya's protected leave, sufficient to overcome her FMLA claim. Evidence of Kelchen's discriminatory animus should have been considered in analyzing Tonya's ADA claim, because Westar relied exclusively on Kelchen's knowledge and recommendation in making its termination decision. Finally, because Westar failed to disclose any information supporting its failure to mitigate affirmative defense prior to filing its materials in opposition to Plaintiff's Partial Motion for Summary Judgment, Plaintiff's Motion to Strike should have been granted, and Plaintiff's Partial Motion for Summary Judgment should have been granted as to Westar's failure to mitigate affirmative defense.

6

## A. The District Court erred in dismissing Tonya's FMLA claims.

In Appellee's Brief, Westar does not separately address Tonya's FMLA interference and retaliation claims. Westar seems to concede Tonya's claim is properly analyzed as an FMLA interference claim, so the argument in this Reply Brief will focus on FMLA interference analysis. Westar fails to acknowledge crucial evidence demonstrating Tonya provided all information necessary to put it on notice of Tonya's need for FMLA leave. In ignoring this evidence and focusing its argument on Tonya's doctor's note and explicit FMLA request, Westar's analysis fails to address most of the information Westar had prior to deciding to terminate Tonya. Additionally, Westar's "wholly unrelated" reason for Tonya's termination – the fact that she failed to call in while she was receiving emergency medical treatment for an unexpected illness – is in fact completely intertwined with Tonya's need for FMLA leave. If Westar's argument was allowed to succeed on this point, employer handbooks would effectively supersede federal law in cases of employees needing unforeseen, emergency medical treatment. For the reasons more fully explained below, the District Court's decision dismissing Tonya's FMLA claims should be reversed.

### 1. Kelchen's Notes Prove Westar Had Notice of Tonya's Need for FMLA Leave Prior to Termination Decision

Appellee's Brief continues to ignore evidence adduced from Westar's current employee and Tonya's former manager indicating Westar had sufficient notice of Tonya's disability and need for leave prior to its termination decision. Westar's focus

7

on the paucity of information provided in the doctor's note Tonya provided on December 21, 2019 is a red herring. Regardless of what Tonya's doctor's note said, according to Kelchen's notes, Tonya provided sufficient information to put Westar on notice that her time off was FMLA-protected. The following is a side-by-side comparison of the requirements for FMLA eligibility and the corresponding information Tonya provided Westar on December 21, 2023, prior to Westar's decision to terminate her.

| Establishing FMLA Eligibility Under Law | Information Tonya Provided Westar |
|---|---|
| The employee had a period of incapacity requiring absence from work. *See Thorson v. Gemini, Inc.*, 205 F.3d 370, 377-378 (8th Cir. 2000). | Tonya told Kelchen her "levels of her diabetic was off [sic.]" (APP.VOL I 92, R. Doc. 39-14, at 1). Tonya spent the day at the doctors' office trying to get her blood sugar in line, during which time she was "not making sense, and [couldn't] concentrate." *Id.* |
| The period of incapacity exceeded three calendar days. *Id.* at 378. | Tonya's physician placed her off work for six days. (APP.VOL II 569, R. Doc. 44-7, at 1). Tonya provided her doctor's note to Kelchen on December 21, 2019. (APP.VOL I 92, R. Doc. 39-14, at 1). |
| The employee received continuing treatment, meaning the employee was treated two or more times within 30 days of the first day of incapacity for the injury or illness by a health care provider. *See* 29 C.F.R. §825.115. | Tonya told Kelchen she would return for a follow-up appointment with her doctor on Monday, December 23, 2023. *Id.* |

8

Tonya provided all this information to Westar prior to anyone at Westar deciding to terminate Tonya. (APP.VOL I 92-93, R. Doc. 39-14, at 1-2). To the extent Westar disbelieved or misunderstood Tonya, it was their burden to request additional information. *See Lichtenstein v. University of Pittsburgh Medical Center*, 691 F.3d 294, 305 (3rd Cir. 2012). Westar did not request additional information, so they waived any argument that the information Tonya provided was insufficient. *Id.*

Westar also persists in its fixation on the timing of Tonya uttering the letters "FMLA," even though such specificity is unnecessary, as a settled matter of law, to gain the protections of the act. *See Thorson*, 205 F.3d at 381. ("[a]n employee need not invoke the FMLA by name in order to put an employer on notice that the Act may have relevance to the employee's absence from work."). Although Tonya's explicit request for "FMLA paperwork" was not necessary, it further bolsters her claim, because hearing these letters should have given Westar pause in assessing whether its termination decision was lawful. Westar's decision to execute the termination decision anyway, despite Tonya's explicit FMLA request, leaves no doubt as to whether it was aware Tonya's leave may be protected.

### 2. A Fast Food Franchise's Employee Handbook Should Not Supplant Federal Law

If Westar's argument is successful, employers will be empowered to effectively override federal law through their own employee handbook provisions. Westar's position with regards to Tonya's termination is that they didn't fire Tonya because she

9

required emergency time off for an unanticipated medical emergency. They fired her because, to the extent Tonya was capable of any type of cognition, calling Westar should have been her first thought. (APP.VOL I 89, 137:2-18, R. Doc. 39-12, at 14). Reasonable minds can disagree about whether Westar's approach is the best way to run a business or maintain a productive workforce, but there remains little doubt Westar's attitude is inconsistent with the FMLA. Congress explicitly set out to strike a specific balance between work and life when it enacted the FMLA, to address the dilemma workers face when they feel they must choose between continued employment and "tending to vital needs." 29 C.F.R. § 825.191. If employers like Westar could undermine federal law by enacting call-in policies more onerous than the regulations under the FMLA and then cite violation of those policies as a termination justification "wholly unrelated" to an employee's need for leave, the FMLA would cease to have any practical effect.

The FMLA implementing regulations for unforeseeable leave show some deference to an employer's policies, while also recognizing flexibility is required to effectively accommodate employees experiencing medical emergencies. *See* 29 C.F.R. § 825.303. While the regulations indicate "[i]t generally should be practicable for the employee to provide notice of leave that is unforeseeable within the time prescribed by the employer's usual and customary notice requirements applicable to such leave," they also recognize an employee should not be required to leave their child during an emergency room visit to call in to work. *Id.* The regulations further indicate if an

10

employee requires emergency medical treatment, she would not be required to follow the call-in procedure "until his or her condition is stabilized and he or she has access to, and is able to use, a phone." *Id.* "Where an employer's internal policies conflict with the provisions of the FMLA, the FMLA controls and an employee need only comply with the requirements of the Act to invoke its protections." *Holladay v. Rockwell Collins, Inc.*, 357 F.Supp.3d 848, 861 (S.D. Iowa January 24, 2019) (quoting *Callison v. City of Phila.*, 430 F.3d 117, 121 (3rd Cir. 2005)). The Eighth Circuit has held an employee's termination was permissible, despite the employee's FMLA request, where the employer's policy was consistent with provisions of the FMLA. *See Bacon v. Hannepin Cty. Med. Ctr.*, 550 F.3d 711, 715 (8th Cir 2008). However, the *Hannepin County* policy is distinguishable from Westar's employee policy, which conflicts with the FMLA.

Westar's Attendance and Punctuality Policy, or at least Westar's application of its Attendance and Punctuality Policy, conflicts with the FMLA, and therefore cannot serve an independent justification for terminating Tonya. As applied to Tonya's situation, Westar indicates its policy required Tonya to contact her employer while she was still receiving emergency medical treatment and her condition had not stabilized. The clear and unambiguous language of the regulations conflicts with Westar's application of its policy. Under the regulations, Tonya was required to contact Westar "as soon as practicable," specifically, when her condition had stabilized. *See* 29 C.F.R. § 825.303. Fact issues remain as to when Tonya's condition stabilized. To the extent Westar's application of its attendance and punctuality policy is inconsistent with the

11

FMLA, federal law controls, and Westar's policy cannot provide an independent justification for firing Tonya. *See Holladay*, 357 F.Supp.3d 848; *See also Mora v. Chem-Tronics, Inc.*, 16 F.Supp.2d 1192, 1217 (S.D. Cal. 1998) (Defendant's attendance policy, mandating employees call within 90 minutes before scheduled shift, conflicted with FMLA, therefore inapplicable). Furthermore, the plain language of the FMLA indicates an employee's rights thereunder "shall not be diminished by any collective bargaining agreement or any employment benefit program or plan." 29 U.S.C. §2652. Similarly, Westar's internal policies should not diminish an employee's rights under the FMLA.

A jury may decide Tonya did not contact Westar "as soon as practicable," but they could just as easily decide that she did. The District Court erred in finding, as a matter of law, that Westar's attendance policy provided a justification for termination "wholly unrelated" to Tonya's need for leave.

### B. In Assessing Westar's ADA liability, Kelchen's Discriminatory Animus is Westar's Discriminatory Animus

Westar cannot divorce Kelchen's discriminatory animus from its decision to terminate Tonya by positing Frank Westermajer as its final decisionmaker. As further set forth in Appellant's Brief, Westermajer decided to terminate Tonya during a six-minute phone call with Kelchen, less than thirty minutes after Tonya's December 21 call with Kelchen. (Appellant Brief at pp. 41-42). The only information Westermajer had regarding Tonya, her disability, and her absence, came from Kelchen, so Kelchen's attitude regarding Tonya's disability is critical to assessing Westar's motives in

12

terminating her. *See Vance v. Ball State Univ.*, 570 U.S. 421, 446-47 (2013) ("If an employer does attempt to confine decisionmaking power to a small number of individuals, those individuals will have a limited ability to exercise independent discretion when making decisions and will likely rely on other workers who actually interact with the affected employee.").

Westar continues to insist Kelchen was not aware of Tonya's diabetes prior to Westar firing her. (Appellee Brief at p. 11). This is inconsistent with Kelchen's notes from her December 21, 2019 call with Tonya. (APP.VOL I, R. Doc. 39-14, at 1). Kelchen's inconsistent statements regarding her own knowledge of Tonya's disability could lead a reasonable jury to infer Kelchen's "false testimony evinced [her] consciousness that she had unlawfully" terminated Tonya in violation of the ADA. *Schwartz v. Clark County*, 650 Fed. Appx. 542, 544 (9th Cir. 2016) (supervisor's lies about knowledge surrounding employee termination show pretext). Whether Kelchen knew Tonya suffered from diabetes prior to firing her is material to Tonya's disability discrimination claim. Under the circumstances presented here, a jury could conclude Kelchen lied about her knowledge of Tonya's disability to cover up her discriminatory motives. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 134 (2000) ("Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt.'").

13

In her deposition, Kelchen testified that she was unaware Tonya suffered from diabetes prior to Tonya's termination:

> 3    Q.    Okay. At any point prior to Tonya's
> 4    termination, did you become – did you – did you
> 5    have any knowledge prior to Tonya's termination
> 6    that she had diabetes?
> 7    A.    No.

(APP.VOL II 330, R. Doc. 42-3, at 23, 91:3-7). This is untrue. Kelchen noted, contemporaneous to her December 21, 2019 call with Tonya, that Tonya indicated she sought emergency medical treatment because, "her levels of her diabetic was off. It wasn't good." (APP.VOL I, R. Doc. 39-14, at 1). Kelchen further noted Tonya told her, "they gave her a shot and medication to get it in line as her sugar level was dropping." *Id.* Kelchen's contemporaneous notes directly contradict her sworn deposition testimony, which Westar cites as evidentiary support to prove Kelchen could not have been motivated by discriminatory animus, because she didn't even know Tonya was diabetic. (*See* Appellee Brief at 11) ("Westar was unaware of Huber's diabetes until after her termination."). A reasonable jury could infer from the falsity of Kelchen's testimony regarding her knowledge of Tonya's disability that Westar is dissembling to cover up its discriminatory purpose. Why else would she lie about knowing Tonya was diabetic?

Kelchen's dishonesty regarding her knowledge of Tonya's disability is only one part of the "convincing mosaic" of circumstantial evidence that raises an inference of intentional discrimination in Tonya's case. *See Lewis v. City of Union City, Georgia,* 918

14

F.3d 1213, 1220, n.6 (11th Cir. 2019) (en banc). Tonya demonstrated close temporal proximity between the time at which Kelchen must admit she became aware of Tonya's disability and Westar's decision to terminate Tonya – less than thirty minutes. Additionally, factual disputes remain regarding whether Kelchen was dismissive of Tonya's requests for accommodations for her diabetes.[1] Finally, the jury should be allowed to decide whether Kelchen's furious reaction during her December 21 call with Tonya was indicative of Westar's frustration over the prospect of having to accommodate Tonya's disability. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973) (employer's "reaction, if any, to [employee]'s legitimate civil rights activities" relevant to evaluating pretext).

A jury need only conclude that Tonya's disability was one motivating factor for termination. *See Pedigo v. P.A.M. Transp., Inc.*, 60 F.3d 1300, 1301 (8th Cir. 1995) ("An employee is entitled to some relief if he or she proves that his or her disability was a 'motivating factor' in the decision made, 'even though other factors also motivated' the employer's decision.") (quoting 42 U.S.C. § 2000e-2(m)). Numerous disputes over

---

[1] Westar indicates there is "no documentation or evidence that these conversations between Huber and Thayer or Kelchen occurred," and "Huber previously argued and alleged she made requests for accommodation which were denied by Westar, however, no facts on the record support that." (Appellee Brief at 5, 19). On the contrary, Tonya testified to her conversations about accommodations with Kelchen and Thayer, and Tonya's testimony is evidence, which is to be believed at the summary judgment stage. (APP.VOL II 240, R. Doc. 42-2, at 22, 85:11-23). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51 (1986) (evidence of the nonmoving party is to be believed).

15

material facts should have precluded summary judgment in Westar's favor on Tonya's disability discrimination claim because a reasonable jury could find Tonya's disability was one motivating factor in Westar's termination decision.

### C. The District Court Erred in Denying Tonya's Motion for Partial Summary Judgment and Tonya's Motion to Strike

The District Court's denials of Tonya's Motion for Partial Summary Judgment and Motion to Strike were unnecessary because the District Court dismissed her claims when it granted Westar's Motion for Summary Judgment. Unfortunately, the District Court did not indicate it was denying Tonya's motions as moot, even though it disposed of Tonya's claims in its decision. (APP.VOL III 758, R. Doc. 66, at 14). Thus, Tonya raised this issue on appeal to preserve her Motion for Partial Summary Judgment and her Motion to Strike. The evidence included in this appeal regarding Plaintiff's Motion for Partial Summary Judgment and Plaintiff's Motion to Strike is identical to the evidence presented to the District Court, so this Court has all evidence before it necessary to reverse the District Court's denials of Tonya's motions. In the alternative, if this Court reverses the District Court's order on the merits of Tonya's claims, but declines to reverse its ruling on her motions, Tonya respectfully requests this Court vacate the District Court's ruling on her motions and remand for a substantive ruling on the merits of both motions.

Contrary to Westar's primary argument, the admissibility of Kelchen and Rowe's affidavits cannot be resolved based on a determination of whether their testimony

16

constitutes expert testimony. Assuming, *arguendo*, that Kelchen and Rowe's affidavits are lay witness testimony, Westar still needed to disclose them. They didn't, so the affidavits should be stricken. These two affidavits were the only significant evidence Westar submitted in opposition to Plaintiff's Motion for Partial Summary Judgment on Westar's mitigation of damages defense, so Plaintiff's motion should also be sustained.

1. **Westar failed to timely disclose Rowe and Kelchen as witnesses with discoverable information regarding its affirmative defenses.**

Sanctions are the same for a failure to disclose an expert witness as for a failure to disclose a lay witness. Under Fed. R. Civ. P. 37(c)(1):

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party **is not allowed** to use that information or witness to supply evidence on a motion, at hearing, or at trial, unless the failure was substantially justified or is harmless.

*Id.* (emphasis added).

Both expert and lay witness disclosures fall under the ambit of Fed. R. Civ. P. 26(a), so the sanctions outlined in Rule 37 apply equally to both. "Under Rule 37(c)(1), exclusion occurs automatically by operation of the rule; the rule permits, but does not require, the imposition of an alternative sanction on a party's motion." *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 702 (8th Cir. 2018). Failure to supplement Rule 26(a) disclosures also triggers the self-executing sanctions set forth in Rule 37. *See* Fed. R. Civ. P. 37(c) advisory committee's note to 1993 amendment ("The revision

17

provides a self-executing sanction for failure to make a disclosure required by Rule 26(a)).

In Tonya's case, Westar failed to disclose Rowe and Kelchen as witnesses possessing discoverable information regarding Westar's failure to mitigate affirmative defense. In Westar's Rule 26 Initial Disclosures, it identified Rowe and Kelchen as individuals who may have discoverable information, however, neither individual was identified as an expert, and the information provided in their affidavits falls outside of the scope of information Westar disclosed. Westar indicated Rowe had "[k]nowledge of Plaintiff's termination and of Defendant's policies and procedures," and Kelchen had "[k]nowledge of Plaintiff's work performance at relevant times." (APP.VOL III 708, R. Doc. 56-3, at 1). Even the broadest possible construction of Westar's disclosures would not have reasonably informed Tonya of the opinions and information Rowe and Kelchen would provide in opposition to her Motion for Partial Summary Judgment, which include statements regarding "the norm within the entire restaurant and fast food industry in the Omaha region," and "virtually all fast food and other restaurants in western Iowa and eastern Nebraska." (APP.VOL III 638, R. Doc. 47-2, at 2, ¶¶4-5).

Westar further failed to timely disclose any of the information contained in the Rowe Affidavit and Kelchen Affidavit in its discovery responses. Plaintiff's Interrogatory No. 8 requests Westar "[i]dentify every principal or material fact Defendant relies on to support its second affirmative defense," which is its failure to

Appellate Case: 23-1087    Page: 18    Date Filed: 06/02/2023 Entry ID: 5283368

mitigate affirmative defense. (APP.VOL. III 716, R. Doc. 56-4, at 4); (APP.VOL I 27, R. Doc. 6, at 5). In response Westar indicated:

> The defense of mitigation of damages is based upon Plaintiff's failures to promptly and appropriately take affirmative steps to take on new employment or otherwise mitigate her damages. Discovery has not yet been conducted upon the Plaintiff to determine material facts in support but is underway currently.

*Id.*

Westar failed to supplement any of its disclosures or discovery responses in accordance with the Federal Rules of Civil Procedure and the scheduling orders applicable to the case. (APP.VOL III 707, R. Doc. 56-2, at 2, ¶¶6-7). Westar further failed to disclose or serve any of the documents referenced in Rowe and Kelchen's affidavits, including the "numerous articles and trade publications" they allegedly consulted. (APP.VOL III 641, R. Doc. 47-3, at 2, ¶4); (APP.VOL III 707, R. Doc. 56-2, at 2, ¶¶7-8); *see also* (APP.VOL III 638, R. Doc. 47-2, at 2, ¶5) (referencing "numerous articles, HR and other trade publications"). Nor has Westar ever produced any documentation reflecting the "posted job openings" referenced in both affidavits. (APP.VOL III 638, R. Doc. 47-2, at 2, ¶5); (APP.VOL III 641, R. Doc. 47-3, at 2, ¶4).

### 2. Westar's Failure was neither substantially justified nor harmless.

Westar has never provided an explanation as to why it withheld the information in Rowe and Kelchen's affidavits until Westar responded to Plaintiff's Motion for Partial Summary Judgment. Westar raised its failure to mitigate affirmative defense on

19

August 17, 2021 and served initial disclosures on October 8, 2021. (APP.VOL I 27, R. Doc. 6, at 5, ¶38); (APP.VOL III 708-10, R. Doc. 56-3, at 1-3). Westar has and had unfettered access to both Rowe and Kelchen, because Westar employs Kelchen, and Rowe is their outsourced HR provider. *See U.S. Commodity Futures Trading Com'n v. Kratville*, 796 F.3d 873 (8th Cir. 2015) (upholding district court's exclusion of affidavit where proponent disclosed expert one day prior to responding to motion for summary judgment, and had ample opportunity to obtain opinion prior to belated disclosure). Under these circumstances, Westar's failure to disclose cannot be substantially justified.

Westar's failure to disclose the subjects of Rowe and Kelchen's testimony prejudices Tonya significantly, because she had already filed her Motion for Partial Summary Judgement prior to having any indication Rowe or Kelchen would provide opinions in support of Westar's affirmative defense. (APP.VOL I 204, R. Doc. 41, at 1); (APP.VOL III 637-639, R. Doc. 47-2, at 1-3); (APP.VOL III 640-642. R. Doc. 47-3, at 1-3). Tonya had already deposed both Rowe and Kelchen, but had no reason to ask them questions about their knowledge of the fast food job market, because Westar never indicated it would rely on their testimony in support of its failure to mitigate affirmative defense. *See generally*, (APP.VOL II 308, R. Doc. 42-3, at 1); (APP.VOL II 370, R. Doc. 42-5, at 1). This is not a mere technical error. The basis for Kelchen's and Rowe's alleged knowledge regarding the fast-food job market throughout the Midwest is questionable on its face and would have served as a rich topic for examination in their depositions, had Tonya had notice that either of them possessed such knowledge or

20

opinions. *See Anderson v. AstraZeneca, L.P.*, 477 Fed. Appx. 427, 428 (8th Cir. 2012) (per curiam) (witness affidavits stricken where Plaintiff failed to disclose each witness in its 26(a) disclosures or during the course of discovery, precluding challenging party from full and fair opportunity to depose the witnesses about their testimony). The basis for Kelchen's broad and sweeping knowledge of the fast food industry is particularly suspect, considering she has worked exclusively for Hardees (a.k.a. Westar) since she was 16 years old. (APP.VOL II 311, R. Doc. 42-3, at 4, 13:9-12).

### 3. No lesser sanction is warranted.

Westar has not shown any special circumstances that would justify a lesser sanction than exclusion of their previously undisclosed witnesses. *See Vanderberg*, 906 F.3d at 705 ("it is the obligation of the party facing sanctions for belated disclosure [or nondisclosure] to show that its failure to comply with the Rule was … deserving of some lesser sanction.").

### 4. The District Court's decision denying Plaintiff's Motion for Partial Summary Judgment as to Westar's failure to mitigate affirmative defense should be reversed.

The Rowe and Kelchen affidavits were the primary evidence on which relied in opposition to Plaintiff's Motion for Partial Summary Judgment as to Westar's failure to mitigate affirmative defense. Because both affidavits should have been stricken, the District Court's order overruling Plaintiff's Motion for Partial Summary Judgment on Westar's failure to mitigate affirmative defense should be reversed.

21

### III. CONCLUSION

For the foregoing reasons, and those more fully set forth in Appellant's Brief, Tonya respectfully requests this Court reverse the District Court's grant of summary judgment in Westar's favor on Tonya's FMLA and ADA claims and reverse the District Court's denials of Plaintiff's Motion for Partial Summary Judgment and Plaintiff's Motion to Strike.

Date: June 2, 2023

TONYA C. HUBER,
Plaintiff-Appellant

By:     *s/ Alexis S. Mullaney*

Alexis S. Mullaney, #25908
Fiedler Law Firm, PLC
17330 Wright Street, Suite 102
Omaha, NE 68130
(402) 316-3060
(402) 513-6501 (facsimile)
alexis@employmentlawnebraska.com
Attorney for Plaintiff-Appellant

## IV.    CERTIFICATE THAT BRIEF IS VIRUS FREE

Pursuant to 8th Cir. R. 28A(h)(2), the undersigned counsel certifies this Brief has been scanned for viruses and is virus free.

s/Alexis S. Mullaney
FIEDLER LAW FIRM

## V.    CERTIFICATE OF COMPLIANCE

Pursuant to FRAP 32(g)(1), I certify the following regarding the foregoing document:

(1) This document complies with the word limit of Fed. R. App. P. 5(c)(1), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) this document contains 4,212 words.

(2) This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Office 365 in Garamond font, 14 pt. for main body text, 14 pt. for footnote text.

s/Alexis S. Mullaney
FIEDLER LAW FIRM

i

# VI.    CERTIFICATE OF SERVICE

I certify that on June 2, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Bonnie Boryca
boyrca@eslaw.com

s/Alexis S. Mullaney
FIEDLER LAW FIRM