# IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRUIT

_____

## APPEAL NO. 23-1087
_____

## TONYA C. HUBER,
## PLAINTIFF-APPELLANT,

### v.

## WESTAR FOODS, INC.,
## DEFENDANT-APPELLEE.

_____

## DEFENDANT-APPELLEE'S PETITION FOR REHEARING EN BANC
_____

Bonnie M. Boryca, Neb. #24886
Raymond E. Walden, Neb. #16952
Erickson & Sederstrom, P.C.
10330 Regency Parkway Drive
Omaha, NE 68114
(402) 397-2200
(402) 390-7137 Fax
boryca@eslaw.com
rwald@eslaw.com
Counsel for Defendant-Appellee Westar Foods, Inc.

# TABLE OF CONTENTS

Page

INTRODUCTION AND RULE 35(b) STATEMENT ...........................................1

STATEMENT OF THE CASE ...................................................................4

ARGUMENT.........................................................................................7

    I.      The panel majority's opinion conflicts with Supreme Court precedent and ADA text.................................................8

    II.     The "intertwinement test" is consistent with 8th Circuit precedent ...............................................................10

    III.    The panel majority's ADA analysis interpretation conflicts with other circuit courts ...................................14

CONCLUSION ....................................................................................16

CERTIFICATE OF COMPLIANCE...........................................................17

CERTIFICATE OF SERVICE..................................................................17

i

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410 (8th Cir. 2010)................13

*Bharadwaj v. Mid Dakota Clinic*, 954 F.3d 1130 (8th Cir. 2020)....................2,3,12

*Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11 (1st Cir. 2002) .................3,15

*Gilooly v. Missouri Dep't of Health & Senior Servs.*,
    421 F.3d 734 (8th Cir. 2005).......................................................................12,13

*Gruttemeyer v. Transit Auth.*, 31 F.4th 638 (8th Cir. 2022) ..................................8

*Hernandez v. Hughes Missile Sys. Co.*, 362 F.3d 564 (9th Cir. 2004) ...................10

*Matthews v. Commonwealth Edison Co.*, 128 F.3d 1194 (7th Cir. 1997) ......3,15,16

*McElwee v. County of Orange*, 700 F.3d 635 (2d Cir. 2012) ........................3,14,15

*McNary v. Shreiber Foods, Inc.*, 535 F.3d 765 (8th Cir. 2008) ............ 2,3,10,11,12

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)...............................1,7,9

*Neal v. E. Carolina Univ.*, 53 F.4th 130 (4th Cir. 2022)....................................3,15

*Newberry v. E. Tex. State Univ.*, 161 F.3d 276 (5th Cir. 1998)..........................3,15

*Olsen v. Capital Region Med. Ctr.*, 713 F.3d 1149 (8th Cir. 2013) ........................1

*Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996 (8th Cir. 2012) ............8

*Raytheon Co. v. Hernandez*, 540 U.S. 44 (2003)...........................................2,3,8,9

*Weatherly v. Ford Motor Co.*, 994 F.3d 940 (8th Cir. 2021) ...............................13

## FEDERAL STATUTES and RULES

42 U.S.C. § 12111(a) .......................................................................................8,14

Fed. R. App. P. 32(a) ...........................................................................................17

Fed. R. App. P. 32(g) ...........................................................................................17

Fed. R. App. P. 32(f) ............................................................................................17

Fed. R. App. P. 35(b)........................................................................................1,17

8th Cir. Local R. 18A(h) ......................................................................................17

Appellate Case: 23-1087     Page: 3     Date Filed: 07/15/2024 Entry ID: 5413598

## INTRODUCTION AND RULE 35(b) STATEMENT

The panel majority used an incorrect legal standard when it reversed the District Court's summary judgment for Appellee Westar Foods, Inc. ("Westar") for the Americans with Disabilities Act count, then used the same faulty standard in also reversing summary judgment on the Family and Medical Leave Act count. The panel majority's analysis is contrary to panel decisions in other Eighth Circuit rulings and contrary to holdings in other United States Courts of Appeal. The full Court of Appeals should determine the correct standard concerning "intertwinement" of a nondiscriminatory reason for an adverse employment decision and the alleged disability, then apply that standard to both counts to vacate the panel's decision and reinstate the summary judgment.

As this Court knows, when an employment discrimination plaintiff lacks direct evidence that discriminatory reasons caused an adverse employment action, her claim is analyzed under the *McDonnell Douglas* burden-shifting framework on a motion for summary judgment. *Olsen v. Capital Region Med. Ctr.*, 713 F.3d 1149, 1153-54 (8th Cir. 2013) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). The plaintiff must show her prima facie case, then the employer must offer a legitimate, nondiscriminatory reason for the adverse action. Both the panel majority and dissent agreed that undisputed evidence supported the employee's prima facie case and established that Westar offered a nondiscriminatory reason for

1

termination. Thereafter, the employee had to produce evidence that the employer's reason was pretext for discrimination. The standards for assessing evidence of pretext and sufficiency of evidence claimed to show pretext are the subject of this Petition for Rehearing En Banc.

In the disability discrimination context, an employer need not show the adverse employment action was completely independent of an employee's disability. The panel majority in this appeal ruled that Westar's burden was to show just that and that it could not do so in its motion for summary judgment. The District Court ruled in Westar's favor on this point, concluding that the Plaintiff-Appellant could not establish pretext in light of Westar's honest belief she violated company policies. Opinion (Doc. 75) p. 8. The panel majority reversed. *Id*. at 22. A dissenting opinion was filed on this issue, finding error in the majority's "intertwinement test" for disability discrimination. *Id*. at 23-32 (Stras, J., concurring and dissenting).

The panel majority's pretext analysis on the ADA claim (and corresponding Nebraska Fair Employment Practice Act claim) conflicts with United States Supreme Court precedent applying the plain ADA text, other Eighth Circuit panel opinions, and opinions of other Courts of Appeals. The Supreme Court's conflicting opinion is *Raytheon Co. v. Hernandez*, 540 U.S. 44 (2003).

The panel majority's decision also conflicts with *McNary v. Shreiber Foods, Inc.*, 535 F.3d 765 (8th Cir. 2008), and *Bharadwaj v. Mid Dakota Clinic*, 954 F.3d

2

1130 (8th Cir. 2020). Neither panel in *McNary* nor *Bharadwaj* applied the stringent standard the majority panel applied to the present case.

Last, the panel decision creates a circuit split by directly conflicting with *Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 28–29 (1st Cir. 2002); *McElwee v. County of Orange*, 700 F.3d 641 (2d Cir. 2012); *Neal v. E. Carolina Univ.*, 53 F.4th 130, 152 (4th Cir. 2022); *Newberry v. E. Tex. State Univ.*, 161 F.3d 276, 279–80 (5th Cir. 1998); and *Matthews v. Commonwealth Edison Co.*, 128 F.3d 1194, 1196 (7th Cir. 1997). Those Courts of Appeals ruled consistently with the Supreme Court's *Raytheon* case that workplace misconduct is a legitimate and nondiscriminatory reason for terminating employment, even when such misconduct is related to an employee's disability.

En banc consideration is necessary for uniformity of this Court's decisions and to conform to Supreme Court precedent. In addition, this issue is one of exceptional importance since it includes an issue on which the panel majority's interpretation of the statutory requirement, "on the basis of a disability," conflicts with the authoritative decisions of other Courts of Appeals.

While the dissent to the panel's decision was limited to the ADA count, the panel majority relied on its reasoning about the ADA count in finding an issue of material fact on the pretext aspect of the FMLA count.

3

Westar respectfully requests that this petition for rehearing en banc be granted to review both the ADA count and the FMLA count.

## STATEMENT OF THE CASE

Westar Foods operates Hardee's restaurants employing more than 200 people. Opinion (Doc. 75) p. 2. In December 2018, Westar hired Huber as a store manager for a Nebraska Hardee's location. *Id*. at 2. Huber's duties included ensuring the store was opened each day. *Id.* at 2. Soon after Huber started, she was diagnosed with diabetes. *Id*. at 2. In March 2019, Huber had to start taking insulin and began feeling sick in December 2019. *Id*. at 2-3. When Huber woke on December 20, she felt "felt out of it" and did not know who or where she was. *Id*. at 3, 23. Huber realized she needed to go to work but became confused, though she was able to drive herself to a nearby doctor's office where she was treated and sedated. *Id*. at 3. During the day, Huber called her son and her boyfriend multiple times, including a 45-minute call to the boyfriend, but made no calls to Westar and did not ask anyone to call Westar. *Id*. at 3, 23.

On December 20, Westar discovered Huber had not come into work when a customer notified Westar's district manager Cindy Kelchen that Hardee's was not open. *Id*. at 3, 23. Kelchen tried calling Huber, who did not answer, so Kelchen called Huber's son, as her emergency contact, who told Kelchen Huber was at the doctor's office, that her "levels were off," and that Huber would call back. *Id*. at 3.

Huber did not call Kelchen that day. *Id.* at 3. Huber's boyfriend drove her from the doctor's office to her home, where she slept until 7:45 a.m. on December 21, although she had been scheduled to work at 5 a.m. that morning, so again she did not report her absence before she was to open the store. *Id.* at 4, 23.

Westar's attendance policy requires that if a store manager is going to be late or unable to work, they must call their district manager immediately and at least two hours before the start of their shift "when possible." *Id.* at 4, 23. Huber was aware of the call-in policy, so immediately upon awaking December 21, she called Kelchen and emailed her a doctor's note excusing her from work through December 26. *Id.* at 4. On the call, Huber described the diabetic episode to Kelchen, who noted that Huber was at the doctor's office because "her levels of her diabetic [sic] was off." *Id.* at 4. Kelchen did not believe Huber could not have called, because she could call her boyfriend and son and drive herself to the doctor's office. *Id.* at 4. Kelchen asked Huber five times why she did not make a "simple phone call" to inform Westar about her absence. *Id.* at 4.

Earlier in her employment, Huber violated the company policy on calling in an absence within days of starting, when she abandoned her shift without notifying a supervisor, then, several months later, she received a written warning for "fail[ing] to call and notify her supervisor . . . that she was leaving her shift." *Id.* at 23. She had missed her previous shift too, also without providing sufficient notice.

5

*Id.* at 23.  The warning notified her that "any further violations" could "lead to further disciplinary action, up to and including termination."  *Id.* at 23.

Immediately following her call with Huber, Kelchen called Frank Westermajer, Westar's owner and president, to convey her conversation with Huber.  *Id.* at 5.  During the call, the decision was made to fire Huber when she returned from sick leave on December 26.  *Id.* at 5, 24.  That is, when she violated the attendance policy for the third time, the company followed through and terminated her for lack of communication, not because she had been sick.  *Id.* at 25.

After the termination decision, but before Huber was informed about it, Huber requested FMLA paperwork, but did not receive it.  *Id.* at 5.  On December 26, 2019, Westar's human resources representative sent a termination letter to Huber, which stated the termination was because Huber "failed to follow the Company's notice procedures for [her] absences on December 20, 2019 and on December 21, 2019." *Id.* at 5.  The letter noted that Huber was "fully aware" of the company's notice procedures because the company had previously disciplined her for not abiding by them. *Id.* at 5.  The letter explained that because Huber was "driving and in contact with [her] son" on the day of her diabetic episode, she "should have been able to provide notification of [her] absences to the Company . .

6

. or at the very least prior to [her] scheduled shift on Saturday, December 21." *Id.* at 5-6.

In addition to these termination reasons, Westar's letter addressed Huber's FMLA request, stating that "[b]ased on [her] explanation that [she] drove [herself] to the clinic on December 20th and the circumstances on December 21, 2019," and because she had "failed to provide notice as soon as possible and practical [and] did not request any need for an accommodation until after the unscheduled absences," her absences would not be covered under the FMLA. *Id.* at 6. Westar has consistently maintained that its reason for Huber's firing was her failure to follow Westar's written policy for giving telephone notice of absences. *Id.* at 24.

## ARGUMENT

This Petition for Rehearing asks whether the panel majority applied the correct legal standard to the pretext prong of the *McDonnell-Douglas* framework. According to the dissent, the majority introduced a new "intertwinement test" to analyze pretext in an ADA discrimination claim, contradicting this Court's precedent, other Circuit's approaches, the plain text of the ADA, and the Supreme Court's interpretation of the ADA. Westar requests that the Court rehear this matter en banc and reject the majority's "intertwinement test."

# I.

## THE PANEL MAJORITY'S OPINION CONFLICTS
## WITH SUPREME COURT PRECEDENT AND ADA TEXT.

The standard for wrongful termination is "on the basis of [her] disability." 42

U.S.C. § 12111(a).  As the dissent pointed out in the present case:

> This language is causal, requiring, at a minimum, that the disability be
> a "motivating factor for [the] termination," if not a but-for cause of
> it. *Gruttemeyer v. Transit Auth.*, 31 F.4th 638, 648 (8th Cir.
> 2022); *see Pulczinski [v. Trinity Structural Towers, Inc.],* 691 F.3d
> [996,] 1002 [(8th Cir. 2012)]* (noting "doubts about the vitality" of the
> motivating-factor test).
>
>     The court's new test, however, is looser than either of those
> causal standards. The flip side of "sufficient[] independenc[ce]."
> *ante* at 11, is "some connection." If there is some connection between
> the disability and the termination, such that there is not "sufficient[]
> independen[ce]" between the two, then the disability-discrimination
> claim goes to the jury. *Id.*

Opinion at 29.

Applying this standard in *Raytheon Co. v. Hernandez*, 540 U.S. 44 (2003), the

Supreme Court vacated and remanded a Ninth Circuit decision that had vacated a

summary judgment for an employer.  The employer refused to rehire the plaintiff

because it had previously fired him for violating the company's drug and alcohol

policy.  The Court noted sufficient evidence to support the employee's prima facie

case of discrimination, involving "whether respondent was qualified for the position

for which he sought to be rehired, and whether the reason for petitioner's refusal to

rehire him was his past record of drug addiction."  *Id.* at 49-50.  The parties agreed

8

the plaintiff was "disabled," so the Supreme Court found the prior drug use qualified under the ADA for protection. *Id*. at 50 n.4. As to whether the employer provided "a legitimate, nondiscriminatory reason for its employment action," Raytheon offered its neutral policy against rehiring employees previously terminated for violating workplace conduct rules. *Id*. at 50-51. This is where the Supreme Court and Ninth Circuit parted. The appellate panel found that a neutral no-hire policy regarding prior drug use was not a legitimate, nondiscriminatory reason because it had a disparate impact on disabled persons absent proof that the plaintiff was currently unable to perform work because of continued drug use, while the plaintiff claimed to be rehabilitated. *Id*. at 51. The Supreme Court said this analysis

> erred by conflating the analytical framework for disparate-impact and disparate-treatment claims. Had the Court of Appeals correctly applied the disparate-treatment framework, it would have been obliged to conclude that a neutral no-rehire policy is, by definition, a legitimate, nondiscriminatory reason under the ADA. And thus the only remaining question would be whether respondent could produce sufficient evidence from which a jury could conclude that "petitioner's stated reason for respondent's rejection was in fact pretext."

*Id*. at 51-52 (citing *McDonnell Douglas*, 411 U.S. at 804).

Had the Supreme Court viewed the pretext test in the same way the majority did in the present case, it would have simply upheld reversal of Raytheon's summary judgment because the purported nondiscriminatory reason (prior drug test failure) was intertwined with the disability of drug addiction. Instead, it remanded for consideration of the disparate-treatment claim under the correct standard. *Id*. at 55.

Appellate Case: 23-1087    Page: 12    Date Filed: 07/15/2024 Entry ID: 5413598

On remand, the Ninth Circuit also did not take the view of the panel majority in the present case on intertwinement. Instead, the Ninth Circuit ruled that Raytheon's inconsistent positions on why it refused rehiring was sufficient to move beyond summary judgment. *Hernandez v. Hughes Missile Sys. Co.*, 362 F.3d 564, 569 (9th Cir. 2004).

## II.

### THE "INTERTWINEMENT TEST" IS INCONSISTENT WITH EIGHTH CIRCUIT PRECEDENT.

The panel majority states that "genuine issues of fact exist regarding whether Westar's termination decision was motivated by discriminatory animus and therefore whether its reason for firing Huber was pretext," because the reason for her termination was related to her disability. Opinion at 7. As cited above, Huber was terminated for not reporting her absences as required by company policy, after two previous similar violations. The majority found this related to her disability because she could not comply with the policy while experiencing a diabetic episode. This heightened standard for establishing pretext could make it nearly impossible for any employer to terminate or discipline a disabled employee who can claim a limited ability to comply with company policy, and it is based on a legal principle that directly conflicts with Eighth Circuit precedent.

In *McNary v. Schreiber Foods, Inc.*, 535 F.3d 765, 766 n.2, 768 (8th Cir. 2008), the employer terminated an employee with diabetes and Graves disease, a

thyroid disorder that can cause fatigue, for sleeping on the job. Although "the reason for [the] employer's adverse employment action [was] . . . inextricably related to [his] disability," as Judge Stras pointed out in his dissent in this case, he noted that the decision in *McNary* was to affirm the grant of summary judgment to the company. Opinion at 31 (citing 535 F.3d at 770). That is, despite the close connection between the disability (a condition causing fatigue) and the purported nondiscriminatory reason for termination (falling asleep on the job), this Court agreed with the district court that the employer provided a legitimate, nondiscriminatory reason for the termination—violating the company policy prohibiting sleeping on the job—and that there was insufficient evidence of pretext. 535 F.3d at 770. Had the Court in *McNary* read the statute and caselaw in the way the panel majority did here, it would have analyzed why the plaintiff was asleep on the job and given legal effect to the relationship between sleeping and the disability under the pretext phase of the test. Instead, the *McNary* panel simply looked at whether sleeping on the job was a violation of company policy.

Deviating from the practice employed in *McNary*, the panel majority in this case looked to *why* Huber violated company policy, bypassing the simple fact that she did in fact violate company policy. The undisputed facts show that Huber not only no-called/no-showed on December 20 and 21, 2019, but that she had been

11

previously reprimanded for the same violation and had been warned that further violation could result in termination. Opinion at 23.

In *Bharadwaj v. Mid Dakota Clinic*, 954 F.3d 1130, 1135 (8th Cir. 2020), a doctor employed by a medical clinic based his ADA claim on his employer's alleged perception that he had a mental impairment and discriminated against him. The employer consistently asserted that he was fired for his inability to get along with others. *Id*. The employee asserted the explanation was a pretext. *Bharadwaj*'s author recounted in his dissent in the present case: "Despite the lack of independence between the disability and alleged misconduct, which was 'his inability to get along with others,' we allowed the grant of summary judgment to the clinic to stand. *Id.* at 1135." Opinion at 31 (Stras, dissenting).

The panel majority tried to distinguish *McNary* and *Bharadwaj* as cases in which the plaintiffs did not argue that their employers discriminated against them by terminating them for disability-related conduct. *Id*. at 12 n.4. In addition to Judge Stras's explanation that "both plaintiffs knew that the argument would not succeed," *id*. at 45 n.9, it is also true in this case that the Appellant did not mention intertwinement in briefing of her ADA claim. *See* Brief of Appellant; Reply Brief of Appellant.

The panel majority relies heavily on *Gilooly v. Missouri Dep't of Health & Senior Servs.*, 421 F.3d 734 (8th Cir. 2005). As the dissent pointed out, *Gilooly* has

Appellate Case: 23-1087     Page: 15     Date Filed: 07/15/2024 Entry ID: 5413598

key differences which prevent the "inextricably related to" standard from being applied to the present case. In *Gilooly*, this Court found that summary judgment on the retaliatory termination claim was improper as the termination letter stated that his termination was based on conduct and deception during the sexual harassment investigation. *Id*. That statement gave rise to a necessary inference of retaliatory motive because the belief that the employee was lying was founded solely on other employees and witnesses and no independently verifiable evidence contradicted the employee's allegations. *Id.* However, the Court noted *Gilooly's* limitations in a later case, and clarified the *Gilooly* standard was to be applied only when "an employer's discipline was based solely on its disbelief of an employee's harassment complaint, without any independent corroboration." *Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 418 (8th Cir. 2010). The standard in *Gilooly* is completely irrelevant, as the facts of this case do not fall into the "narrow" application as clarified in *Alvarez*. Nor is the panel majority's use of *Gilooly* supported by *Weatherly v. Ford Motor Co.,* 994 F.3d 940 (8th Cir. 2021), which focused on whether an administrative charge with the EEOC gave adequate notice of a disability discrimination claim.

Thus, the Eighth Circuit's own precedent establishes that violating a neutral company policy or procedure is a legitimate nondiscriminatory reason that overcomes a pretext claim, even if a disability caused the violation. To apply a

Appellate Case: 23-1087    Page: 16    Date Filed: 07/15/2024 Entry ID: 5413598

standard asking why the violation occurs instead of focusing on if there was a violation at all directly contradicts this Court's precedent.

## III.

## THE PANEL MAJORITY'S ADA ANALYSIS INTERPRETATION CONFLICTS WITH OTHER CIRCUIT COURTS.

The panel majority says Westar's reason for terminating Huber is so inextricably related to her disability that they cannot be considered independent of one another. The panel found that because Huber violated policy due to her diabetic episode, it is not "much of a stretch" to conclude that Huber was terminated as a result of her disability. This analysis stretches beyond the statute and beyond the interpretation of other circuit courts.

The statutory standard for wrongful termination is "on the basis of [her] disability." 42 U.S.C. § 12111(a). This is inconsistent with the panel majority's higher standard that any termination for violation of company policy is nonetheless based on the employee's disability if there is any connection between the violation and the disability. Numerous other circuit courts addressing the same issue have held contrary to the panel's opinion, holding that "workplace misconduct is a legitimate and nondiscriminatory reason for terminating employment, even when such misconduct is related to a disability." *McElwee v. County of Orange*, 700 F.3d 641 (2d Cir. 2012). In determining whether the plaintiff was discriminated against for the defendant's failure to accommodate, *McElwee* said an "accommodation that

14

simply excuses past misconduct is *unreasonable* as a matter of law," and "workplace misconduct is a legitimate and nondiscriminatory reason for terminating employment, even when such misconduct is related to a disability." *Id.* at 641 (emphasis added). *Neal v. E. Carolina Univ.*, 53 F.4th 130, 152 (4th Cir. 2022), stated that "misconduct—even misconduct related to a disability—is not itself a disability and may be grounds for dismissal."

Similarly, *Gillen v. Fallon Ambulance Serv*, 283 F.3d 11, 29 (1st Cir. 2002), said "an employer may base a decision on an employee's actual limitations, *even if* those limitations result from a disability." (emphasis added). *See also Matthews v. Commonwealth Edison Co.*, 128 F.3d 1194, 1196 (7th Cir. 1997) ("Even if the individual is qualified, if his employer fires him for any reason other than that he is disabled there is no discrimination 'because of' the disability. This is true even if the reason is the consequence of the disability, as is implicit in the decisions cited earlier concerning the blind, alcoholic, or insulin-dependent worker. The employer who fires a worker because the worker is a diabetic violates the Act; but if he fires him because he is unable to do his job, there is no violation, even though the diabetes is the cause of the worker's inability to do his job."). Accord *Newberry v. E. Tex. State Univ.*, 161 F.3d 276, 279–80 (5th Cir. 1998).

The panel majority's approach that the disability and the adverse action are inextricably intertwined has been widely rejected. The example provided in

15

*Matthews* addresses the very same disability at issue here and supports the interpretation adopted by numerous other courts: that Westar's termination of Huber based on her inability to follow company policy and procedure, even if caused by her diabetes, is not a violation under the ADA. The above circuit courts all found that even though a disability may have caused the conduct that resulted in the adverse employment action, that alone does not amount to the action being on the basis of an individual's disability. The same result should be found here.

## CONCLUSION

The ADA standard for establishing disability discrimination is that adverse employment action was taken "on the basis" of one's disability, not that action based on violation of a neutral policy is pretextual unless the violative act was independent from the disability. The Court should give en banc consideration to the panel majority's opinion in order to secure or maintain uniformity of this Court's decisions, and to achieve consistency among the circuit courts. It should also give the FMLA claim similar consideration because the panel majority's FMLA analysis expressly depended on its intertwinement analysis under the ADA claim.

Westar respectfully requests this Court sitting en banc to grant Westar's motion for rehearing, vacate the panel reversing the judgment of the district court, and affirm the finding of the district court.

Respectfully submitted this 15th day of July 2024.

16

By:     /s/ Raymond E. Walden
        Bonnie M. Boryca, Neb. #24886
        Raymond E. Walden, Neb. #16952
        Erickson & Sederstrom, P.C.
        10330 Regency Parkway Drive
        Omaha, NE 68114
        (402) 397-2200
        (402) 390-7137 Fax
        boryca@eslaw.com
        rwald@eslaw.com
        Counsel for Defendant-Appellee
        Westar Foods, Inc.

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(g)

1. This document complies with the type-volume limitation as set out in Fed. R. App. P. 35(b)(2)(A), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) this document contains 3,868 words, as determined by Microsoft Office Word's word-processing systems word count.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Times New Roman.

3. This document complies with Eighth Circuit Local Rule 28A(h) as it has been scanned for viruses and is virus free.

/s/ Raymond E. Walden

## CERTIFICATE OF SERVICE

It is hereby certified that a copy of the above and foregoing document delivered by electronic mail through the Court's online case management system, to the below-listed attorneys of record on the 15th day of July 2024:

Alexis S. Mullaney:
alexis@employmentlawnebraska.com

/s/ Raymond E. Walden

17