# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

## APPEAL NO. 23-1087

## TONYA C. HUBER,
## PLAINTIFF-APPELLANT,

### v.

## WESTAR FOODS, INC.,
## DEFENDANT-APPELLEE.

## PLAINTIFF-APPELLANT'S RESPONSE TO APPELLEE'S PETITION FOR EN BANC REHEARING

Alexis S. Mullaney, #25908
Fiedler Law Firm, PLC
17330 Wright Street, Suite 102
Omaha, NE 68130
(402) 316-3060
(402) 513-6501 (facsimile)
alexis@employmentlawnebraska.com

Attorney for Plaintiff-Appellant.

1

# TABLE OF CONTENTS

I.   TABLE OF AUTHORITIES ................................................................................. 3

II.  INTRODUCTION AND RESPONSE TO RULE 35(b) STATEMENT ........... 5

III. STATEMENT OF THE CASE ..................................................................... 7

IV.  ARGUMENT ................................................................................................ 7

   A.   The panel majority opinion does not conflict with *Raytheon*. ............................... 7

   B.   The panel majority opinion is consistent with Eighth Circuit precedent. .......... 9

   C.   Other circuit courts cited by Petitioner have utilized the same analysis as the panel majority. ..................................................................................... 14

   D.   The panel majority's ADA decision is independently supported by pretext evidence. .................................................................................................... 18

   E.   Petitioner's request provides no legal basis for reversing the panel's unanimous decision on Huber's FMLA claims. ....................................... 19

V.   CONCLUSION ........................................................................................... 20

VI.  CERTIFICATE THAT BRIEF IS VIRUS FREE .................................... i

VII. CERTIFICATE OF COMPLIANCE ......................................................... i

VIII. CERTIFICATE OF SERVICE ................................................................ ii

# I.    TABLE OF AUTHORITIES

**Cases**

*Ballato v. Comcast Corp.*, 676 F.3d 768 (8th Cir. 2012) ...................................... 18

*Bharadwaj v. Mid Dakota Clinic*, 954 F.3d 1130 (8th Cir. 2019) ................................. 11, 12

*Clinkscale v. St. Therese of New Hope*, 701 F.3d 825 (8th Cir. 2012) ........................... 18, 19

*Gillen v. Fallon Ambulance Serv.*, 283 F.3d 11 (1st Cir. 2002) ........................... 4, 10, 14, 15

*Gilooly v. Mo. Dep't of Health & Senior Servs.*, 421 F.3d 734 (8th Cir. 2005) ........... 9, 10, 11

*Hernandez v. Hughes Missile Sys. Co.*, 362 F.3d 564, 569 (9th Cir. 2004) ...................... 8

*Matthews v. Commonwealth Edison Co.*, 128 F.3d 1194 (7th Cir. 1997) ........................... 16

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) ................................... 7, 8

*McElwee v. County of Orange*, 700 F.3d 641 (2nd Cir. 2012) .................................... 16

*McNary v. Schrieber Foods, Inc.*, 535 F.3d 765 (8th Cir. 2008) ............................... 12, 13

*Neal v. E. Carolina Univ.*, 53 F.4th 130 (4th Cir. 2022) ..................................... 16

*Newberry v. E. Tex. State Univ.*, 161 F.3d 276 (5th Cir. 1998) ............................... 16

*Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996 (8th Cir. 2012) ................. 10

*Raytheon Co. v. Hernandez*, 540 U.S. 44 (2003) ............................................. 6, 7, 8

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 134 (2000) ....................... 17

*Ridout v. JBS USA, LLC*, 716 F.3d 1079, 1086 (8th Cir. 2013) ................................. 17

*Spurling v. C&M Fine Pack, Inc.*, 739 F.3d 1055 (7th Cir. 2014) .............................. 15, 16

*Womack v. Munson*, 619 F.2d 1292, 1297 (8th Cir. 1980) ...................................... 6, 9

Appellate Case: 23-1087     Page: 3     Date Filed: 07/26/2024 Entry ID: 5418483

**Statutes**

42 U.S.C. § 12112(d)(3)................................................................... 14

**Regulations**

29 C.F.R. § 1630.14 ...................................................................... 11

4

## II. INTRODUCTION AND RESPONSE TO RULE 35(b) STATEMENT

Prejudice and honesty are not mutually exclusive. An employer may honestly believe that a one-handed job applicant is incapable of safely performing the functions of an EMT. *See Gillen v. Fallon Ambulance Serv.*, 283 F.3d 11 (1st Cir. 2002). Should the professed honesty of an employer's belief preclude any inquiry into whether that belief is held in good faith? Should it matter whether the employer's honest belief was informed only by its own preconceived ideas about the employee's disability, unsupported by objective evidence? Petitioner urges this Court to declare the basis for an employer's honest belief regarding the functional limitations posed by a disabled employee irrelevant to determining whether the employer acted in good faith or was motivated by discriminatory intent. This extreme view was rejected by the panel majority in the present case just as it has been rejected by other circuit courts of appeal. *Id.*

The panel majority's consideration of Westar's honest belief regarding Tonya Huber's disability is the primary focus of Defendant-Appellee's Petition for Rehearing En Banc ("Petition"). Westar terminated Huber for failing to call into work on days she was experiencing a diabetic episode. (Opinion, p. 12). "Huber asserted her disability precluded her from calling in." *Id.* Cindy Kelchen, Huber's supervisor, "did not believe Huber and assumed she was able to abide by the call-in policy on the days of her diabetic

5

episode. Westar's decision to terminate Huber was based on this assumption." *Id.* The panel majority held that these facts raised a jury question as to "whether Westar's termination decision was made in good faith or supports a showing of pretext." *Id.* This question, in addition to significant pretext evidence, raised a jury question regarding "whether Westar's termination decision was motivated by discriminatory animus" and supported the panel majority's reversal of the district court's dismissal of Huber's ADA discrimination claim. *Id.*, p. 17.

Contrary to Petitioner's assertions, the panel majority did not hold that Westar failed to articulate a legitimate, nondiscriminatory reason for Huber's termination. (Petition, p. 3). Or that Westar's reliance on a termination justification connected to Huber's disability conclusively established pretext, or even a jury question regarding pretext. (Petition, p. 8). It certainly did not hold that an employer is prohibited from taking an adverse action against an employee based on misconduct related to the employee's disability. (Petition, p. 11). The panel majority's holding does not contain any test and is hardly a sweeping mandate.

The panel majority merely applied an established legal principle to the facts of the present case. Namely, that an employer's professed honest belief "will not always preclude a discrimination case from reaching a jury." (Opinion, p. 11). Specifically, where "an employer seeks to assert a good faith argument," and "the reason for an employer's adverse employment action is 'so inextricably related to' the disability, 'they

6

cannot be considered independently of one another.'" (Opinion, p. 11) (quoting *Womack v. Munson*, 619 F.2d 1292, 1297 (8th Cir. 1980).

Petitioner exaggerates the panel majority's holding and its effect, and thereby engenders a false controversy between the decision in this case and established precedent. Because Petitioner's various iterations of this "intertwinement test" bear little resemblance to the panel majority's holding in the present case, any conflict between Petitioner's tests and existing law is hypothetical, and neither justifies nor warrants en banc reconsideration.

Additionally, Petitioner furnishes no independent justification for en banc reconsideration of the panel's unanimous decisions on Huber's FMLA interference and retaliation claims, which are subject to analysis distinct from her ADA claim. Petitioner's motion should be denied as to both FMLA claims, regardless of this Court's decision on Huber's ADA claim.

## III.   STATEMENT OF THE CASE

The facts of Huber's case are exhaustively and accurately set forth in the panel majority's opinion and are incorporated by this reference. (Opinion, pp. 2-6).

## IV.   ARGUMENT

### A. The panel majority opinion does not conflict with Raytheon.

The panel majority does not hold that firing an employee for workplace misconduct is unlawful per se under the ADA just because the alleged misconduct

7

related to the employee's disability. (Petition, p. 9). This rule, if the panel majority adopted it, would indeed suffer from the same analytical flaw that the United States Supreme Court rejected in *Raytheon Co. v. Hernandez*, 540 U.S. 44 (2003). It is apparent on the face of the panel majority's decision, however, that it did not adopt any such rule. If the panel majority had outright rejected Westar's termination justification as discriminatory, the opinion would contain no discussion of pretext evidence, because the *McDonnell Douglas* analysis would have ceased at the second stage, based on Westar's failure to meet its burden of articulating a legitimate nondiscriminatory reason for its termination decision. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *See Raytheon*, 540 U.S. at 50-51.

The *Raytheon* opinion rejects the premise that violating a company rule is always a prohibited basis for an adverse action if the violation related to the employee's disability. *Id.* at 54-55, n. 6. The Supreme Court recognized, however, that the employer's articulation of a nondiscriminatory justification was not dispositive of whether the employer discriminated. Thus, the Supreme Court remanded the case for the Ninth Circuit's assessment at the next stage of the *McDonnell Douglas* analysis, determining whether the applicant "could produce sufficient evidence from which a jury could conclude that 'the petitioner's stated reason for respondent's rejection was in fact pretext.'" *Id.* at 55; 52. On remand the Ninth Circuit again denied the employer summary judgment, based in part on inconsistencies in the decisionmaker's testimony

8

regarding her knowledge of the plaintiff's disability, which contributed to its assessment that a jury question remained regarding pretext. *Hernandez v. Hughes Missile Sys. Co.*, 362 F.3d 564, 569 (9th Cir. 2004).

Similarly, in the present case, the panel majority did not reverse or even scrutinize the district court's finding that "Westar offered a legitimate, nondiscriminatory reason for terminating Huber's employment." (Opinion, p. 8). Rather, like the Supreme Court in *Raytheon*, the panel majority determined that Westar's articulation of its legitimate nondiscriminatory reason for termination was sufficient to meet Westar's burden at the second stage of *McDonnell Douglas*. (Opinion, p. 8). The panel majority's decision proceeded to evaluate the potential import of Westar's termination decision being inextricably related to Huber's disability, and weigh the pretext evidence Huber presented. Like the *Raytheon* Plaintiff, Huber presented evidence that Westar was aware of Huber's disability prior to its termination decision, despite its repeated denial of having such knowledge. (Opinion, p. 16). This analysis is entirely consistent with *Raytheon*, and does not justify en banc reconsideration of the panel majority's decision.

## B. The panel majority opinion is consistent with Eighth Circuit precedent.

The panel majority did not hold that "some connection" between an employee's disability and an employer's termination decision establishes conclusive evidence of pretext. *See* Opinion, pp. 28-29; Petition, p. 10. Rather, consistent with the principles articulated by the Eighth Circuit in *Gilooly v. Mo. Dep't of Health & Senior Servs.*, 421 F.3d

9

<u>734</u> (8th Cir. 2005), the panel majority determined that interconnectedness between an employee's disability and an employer's termination justification *may* raise a jury question regarding an employer's assertion of good faith. (Opinion, pp. 11-12).

In *Gilooly*, the Eighth Circuit held that an employer who fired its employee based on a belief that the employee lied during a sexual harassment investigation failed to articulate a termination reason "'sufficiently independent from the filing of the complaint to constitute legitimate and nonretaliatory reasons for discharge.'" <u>421 F.3d</u> <u>at 740</u>, (quoting *Womack v. Munson*, <u>619 F.2d 1292, 1297</u> (8th Cir. 1980)). The *Gilooly* court explained that the employer's termination justification lacked "independently verifiable evidence that contradicted Gilooly's allegations," which, without corroboration, merely amounted to a fact issue regarding the veracity of Gilooly's complaints. *Id.* at 740-41. By resolving this fact issue in favor of the other witnesses, the employer impermissibly "short-circuit[ed]" Gilooly's retaliation claim before it began. *Id.* at 741. The *Gilooly* opinion limited its holding to those situations where a paucity of evidence supported the employer's decision. If the employer had developed a "clearer record of deception and detailed the basis for such findings, a court could find that the firing was not for protected conduct." *Id.* In the absence of such a record, the panel majority determined the matter was "best left to a factfinder to decide." *Id.*

Similarly, in the present case, Westar's alleged good faith belief that Huber could have called her supervisor, despite Huber's diabetic episode and the incapacity resulting

10

therefrom, lacked any verifiable supporting evidence. Westar conducted no investigation, requested neither records nor medical examination, and instead relied solely on Kelchen's belief that Huber's diabetic episode was not sufficiently incapacitating to prevent Huber from calling Kelchen. Applying the Eighth Circuit's reasoning in *Gilooly*, *supra*, and viewing these facts in the light most favorable to Huber, the panel majority merely holds that a jury should determine whether "Westar's termination decision was made in good faith or supports a showing of pretext." (Opinion, p. 12). Underscoring the relatively narrow practical effect of this portion of the opinion, the panel majority proceeds to analyze the inferences to be drawn from a variety of pretext evidence before determining that Huber's case should be decided by a jury. *Id.*, pp. 13-17.

Application of *Gilooly* to a disability discrimination case is appropriate, because an employer's honest belief regarding how an employee's disability impacts their functional capabilities could be discriminatory even if it is genuinely held. As the First Circuit explained in *Gillen*, "[e]ven if the employer's belief is honestly held, on particular facts a jury still might conclude that it rested on an unfounded stereotype (and, therefore, constituted discrimination)." 283 F.3d at 29. This is still consistent with the Eighth Circuit's holding in *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996 (8th Cir. 2012), because the panel majority's analysis would be inapplicable unless an

employer's termination justification was inextricably related to the employee's disability. (Opinion, p. 13).

Extending the *Gilooly* analysis to disability discrimination claims does not force an employer to choose between ignoring employee misconduct and risking drawn-out litigation. (Opinion, p. 31). If an employer follows the alternative path described in *Gilooly*, and obtains independent evidence supporting its beliefs about an employee's disability, it can act based on that evidence without suffering repercussions, even if the honest belief turns out to be incorrect. 421 F.3d at 741. Most employers are not doctors, which leaves them ill-equipped to make the individualized assessments mandated by the ADA unless they have support. The ADA offers employers a host of tools to bridge this gap by requesting additional documentation, or even a medical examination, if needed, to understand how an employee's disability impacts that individual's ability to do their job. *See* 29 C.F.R. § 1630.14(c). Under the panel majority's decision, when an employer fails to utilize such resources, and instead relies on its own assumptions, a jury question may arise regarding whether the employer's beliefs, honest or not, were consistent with good faith.[1]

A principled application of the panel majority's holding in the present case to the facts presented in *Bharadwaj v. Mid Dakota Clinic*, 954 F.3d 1130 (8th Cir. 2019), would

---

[1] Westar declined Huber's multiple offers to provide additional information from her doctor. (Opinion, p. 5).

Appellate Case: 23-1087    Page: 12    Date Filed: 07/26/2024 Entry ID: 5418483

not have altered the result. In that case, Dr. Bharadwaj was fired because he could not get along with other employees. *Id.* at 1135. He did not suffer from, nor did his employer believe he suffered from any disability. *Id.* at 1134-1135, n. 4. Thus, unlike the present case, there was no reason for the court to consider whether the employer's proffered reason for termination was based on unfounded assumptions regarding their disabled employee's functional limitations. They didn't have a disabled employee and they didn't think they did.

While *McNary v. Schrieber Foods, Inc.*, 535 F.3d 765 (8th Cir. 2008) warrants a more nuanced assessment than *Bharadwaj, supra*, the facts before the Eighth Circuit in *McNary* are also distinguishable from the present case. As the panel majority pointed out, unlike Huber, McNary did not assert that his medical condition caused the conduct which led to his termination. *Id.* at 769-770; Opinion at p. 12, n. 4. Rather, McNary argued that his employer was incorrect, and he was not actually sleeping on the job, because he was on an authorized break. *McNary*, 535 F.3d at 769. Under those circumstances, the employer's belief that McNary was sleeping on the job in violation of workplace rules did not have to be correct, as long as this was the employer's "honest belief." *Id.* at 769-770.

Appellate Case: 23-1087     Page: 13     Date Filed: 07/26/2024 Entry ID: 5418483

By contrast, and contrary to Petitioner's representations[2], Huber has consistently asserted her disability prevented her from calling her supervisor while she was incapacitated by and receiving treatment for her disability, and that she contacted her supervisor as soon as possible in accordance with Westar's policy.[3] *See* Appellant Brief, pp. 45-47. This distinguishes Huber's case from *McNary*, because Huber does not complain that Westar was incorrect about whether she violated its attendance policy. Westar did not fire Huber because Kelchen thought Huber was somewhere other than her doctor's office. Westar fired Huber because Kelchen did not believe Huber's diabetes prevented her from calling Kelchen. Huber says her diabetes did, in fact, prevent her from calling Kelchen. This is why Huber's case raises a jury question, while McNary's did not.

## C. Other circuit courts cited by Petitioner have utilized the same analysis as the panel majority.

While Petitioner's "intertwinement rule" would run contrary to opinions from other circuit courts, the panel majority's decision does not. Decisions out of both the First and Seventh circuits are consistent with the panel majority's holding in the present case, and inconsistent with the analysis urged by Petitioner and the dissent. If en banc

---

[2] *See* Petition, p. 12 ("it is also true in this case that Appellant did not mention intertwinement in briefing her ADA claim.").

[3] Huber also consistently argued that her alleged policy violation was "intertwined" with her qualifying condition under the FMLA. *See* Appellant Brief, pp. 45-47.

Appellate Case: 23-1087    Page: 14    Date Filed: 07/26/2024 Entry ID: 5418483

reconsideration of the present case resulted in adoption of the Petitioner's or dissent's reasoning, that would more likely cause a circuit split.

The First Circuit's decision in *Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, though more focused on an employee's qualifications, is strikingly consistent with the panel majority's decision in this case.[4] There, the First Circuit determined that a fact issue precluded summary judgment where an employer's professed honest belief that a one-handed prospective employee could not meet its lifting requirements was unsupported by objective medical evidence. *Id.* at 32. The *Gillen* employer even obtained a preemployment physical under 42 U.S.C. § 12112(d)(3), and cited its reliance on the physician's opinion as evidence of its good faith. *Id.* at 31. The First Circuit did not find the supporting physician's assessment dispositive, however, noting "the physician neglected fully to examine the applicant or to conduct an individualized examination of the effects of a known disability – and the employer knew as much." *Id.* at 32.

The opinion in *Gillen* strikes precisely the same balance as the panel majority in the present case, illustrating the clear distinction between examining the basis for an employer's honest belief regarding an employee's disability, and requiring an employer to disregard an employee's known functional limitations in making employment decisions. Though the First Circuit recognized "an employer may base a decision on an

---

[4] Petitioner cites to *Gillen*, *supra*, as directly conflicting with the panel majority's opinion, posing a risk of a circuit split that would justify en banc reconsideration of the present case. (Petition, p. 3).

15

employee's actual limitations, even if those limitations result from a disability," it found this principle to be in harmony with its responsibility to "scrutinize the facts, indulging all reasonable inferences in the appellant's favor, and ask whether the evidence conclusively demonstrates that [the employer] acted on the basis of an objectively reasonable assessment of the appellant's capabilities and not on the basis of an unfounded stereotype about the nature of her impairment." *Id.* at 29-30.

Similarly supportive of the panel majority's holding in the present case, in *Spurling v. C&M Fine Pack, Inc.*, 739 F.3d 1055 (7th Cir. 2014), the Seventh Circuit reversed a district court's summary judgment dismissal of an ADA claim where the employer terminated its employee based on disability related misconduct. *Id.* at 1060-62. The *Spurling* employer had not received notice of Spurling's disability until after it had issued Spurling notice that it was considering termination due to Spurling repeatedly falling asleep on the job. *Id.* at 1058; 1062. While off work on disciplinary suspension, Spurling informed HR that her performance issues may be related to a medical condition, provided a doctor's note indicating she suffered from a disability, and requested time off to determine the extent of her medical issues. *Id.* at 1058-59. Though the employer offered to engage in an interactive process[5], it failed to follow through, and instead terminated Spurling pursuant to its Final Warning/Suspension. *Id.* at 1059. The Seventh

---

[5] Like Spurling, Ms. Huber requested a finite leave of absence and Westar failed to engage in the interactive process. (Opinion, p. 5).

Appellate Case: 23-1087     Page: 16     Date Filed: 07/26/2024 Entry ID: 5418483

Circuit held that the employer's knowledge of the employee's disability, paired with its failure to engage in the interactive process to determine whether a reasonable accommodation could have enabled the employee to do her job, raised a jury question regarding whether the employer discriminated against Spurling based on her disability when it terminated her. *Id.* at 1062; 1063.

The dissent in the present case closes its argument with a quote from the Seventh Circuit's decision in *Matthews v. Commonwealth Edison Co.*, 128 F.3d 1194 (7th Cir. 1997), suggesting an employer does not violate the ADA by firing an employee for disability-related misconduct. Any implication that *Matthews* stands for such a proposition is inconsistent with and undermined by the Seventh Circuit's subsequent decision in *Spurling*, and does not demonstrate a circuit split or support en banc reconsideration of the panel majority's decision in the present case.

Similarly, the panel majority's decision does not conflict with the principles articulated in *McElwee v. County of Orange*, 700 F.3d 641 (2nd Cir. 2012), *Newberry v. E. Tex. State Univ.*, 161 F.3d 276 (5th Cir. 1998), or *Neal v. E. Carolina Univ.*, 53 F.4th 130 (4th Cir. 2022), because the panel majority in the present case does not hold that an employer is forbidden from considering an employee's disability-related misconduct or poor performance in making employment decisions. Petitioner's motion for en banc rehearing is not supported by evidence of any legitimate conflict between the panel majority's decision and the opinions of another circuit court.

**D. The panel majority's ADA decision is independently supported by pretext evidence.**

In its focus on the alleged intertwinement test, Petitioner ignores and thereby fails to account for the overwhelming pretext evidence supporting the panel majority's determination that a jury must decide whether Westar discriminated against Huber by terminating her. This evidence viewed in the light most favorable to Huber provides ample independent justification for the panel majority's reversal of the district court's dismissal of Huber's ADA claim.

The panel majority's pretext analysis is four pages long and will not be exhaustively recounted here. (Opinion, pp. 13-17). To provide one illustrative example, Westar denies knowing about Huber's diabetes prior to its decision to terminate her. (Opinion, p. 16). Westar's records, however, contradict this denial. (Opinion, p. 16). Kelchen's notes show that she learned from Huber on December 21 that the reason Huber missed work December 20 and 21 was due to her diabetes. *Id.* On these facts, a jury could reasonably infer that Kelchen lied about her knowledge of Huber's disability to cover up her own discriminatory motive. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 134 (2000) (holding that a "trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose"); *see also Ridout v. JBS USA, LLC*, 716 F.3d 1079, 1086 (8th Cir. 2013) (same).

Huber's pretext argument is further supported by evidence of actions and behavior reflecting decision makers' discriminatory animus, and exceptional temporal

18

proximity. When this pretext evidence is viewed in the light most favorable to Huber, it independently justifies the panel majority's reversal of the district court's decision on Huber's ADA claim.

### E. Petitioner's request provides no legal basis for reversing the panel's unanimous decision on Huber's FMLA claims.

In addition to applying a faulty analysis to the panel majority's decision on Huber's ADA claim, Petitioner provides no basis for en banc rehearing of the panel's unanimous decisions regarding Huber's FMLA interference and retaliation claims. The dissent in the present case was limited to Huber's ADA discrimination claim. (Petition, p. 3). Huber's FMLA claims are distinct from her ADA claim, specifically, both FMLA claims implicate analysis of whether a fact issue remains for a jury to decide whether Huber provided notice "as soon as practicable" and thereby gained the protections of the FMLA. (Opinion, p. 20-22).

The inapplicability of Petitioner's argument is particularly stark in the context of Huber's FMLA interference claim, where an employer's intent is immaterial, thereby obviating any assessment of Westar's "honest belief." *See Ballato v. Comcast Corp.*, 676 F.3d 768 (8th Cir. 2012). Additionally, the present case is essentially indistinguishable from *Clinkscale v. St. Therese of New Hope*, 701 F.3d 825 (8th Cir. 2012), where the Eighth Circuit held "evidence suggesting a causal connection between [the employee's]

19

condition and her [misconduct]" precluded summary judgment. *Id.* at 829. (Opinion, p. 20).

## V.    CONCLUSION

For the foregoing reasons, Appellant respectfully requests this Court deny Westar's Petition in its entirety.

Date: July 26, 2024

TONYA C. HUBER,
Plaintiff-Appellant

By:    *s/Alexis S. Mullaney*

Alexis S. Mullaney, #25908
Fiedler Law Firm, PLC
17330 Wright Street, Suite 102
Omaha, NE 68130
(402) 316-3060
(402) 513-6501 (facsimile)
alexis@employmentlawnebraska.com
Attorney for Plaintiff-Appellant

20

## VI.   CERTIFICATE THAT BRIEF IS VIRUS FREE

Pursuant to 8th Cir. R. 28A(h)(2), the undersigned counsel certifies this Brief has been scanned for viruses and is virus free.

s/Alexis S. Mullaney
FIEDLER LAW FIRM

## VII.   CERTIFICATE OF COMPLIANCE

Pursuant to FRAP 32(g)(1), I certify the following regarding the foregoing document:

(1) This document complies with the word limit of Fed. R. App. P. 5(c)(1), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) this document contains 3,706 words.

(2) This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Office 365 in Garamond font, 14 pt. for main body text, 14 pt. for footnote text.

s/Alexis S. Mullaney
FIEDLER LAW FIRM

Appellate Case: 23-1087     Page: 21     Date Filed: 07/26/2024 Entry ID: 5418483

# VIII. CERTIFICATE OF SERVICE

I certify that on July 26, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Bonnie Boryca
boyrca@eslaw.com

Raymond E. Walden
rwald@eslaw.com

s/Alexis S. Mullaney
FIEDLER LAW FIRM